Eichardson, Oh. J.,
delivered the opinion of the court:
At the times these depredations were committed there was a condition of flagrant war between the United States and the tribe of Eogue Eiver Indians; not that a formal declaration of war had been made by Congress, but rather a war existing by the acts of the Indians.
On 8th September, 1853, Gen. Lane, commanding the forces in Oregon, entered into stipulations with these Indians on the battlefield during an armistice which wore never printed, so far as we are informed, and the terms of which are known to us only by reference in the third article of a treaty which was subsequently made, September 10,1853, and duly promulgated (10 Stat. L., 1018). That article is as follows:
“Article 3. For and in consideration of the cession and relinquishment contained in article 1st, the United States agree to pay to the aforesaid tribe the sum of sixty thousand dollars,
“fifteen thousand of which sum to be retained (according to the stipulations of article 4th of a “treaty of peace made and entered into on the 8th day of September, 1853, between Gen. Jo Lane, commanding forces of Oregon Territory, and Jo, principal chief, Sam and Jim, subordinate chiefs, on the part of the Eogue Eiver tribe of Indians”), by the superintendent of Indian Affairs, to pay for the property of the whites destroyed by them during the late war;
“ the amount of property so destroyed to be estimated by three disinterested commissioners, to be appointed by the superintendent of Indian Affairs, or otherwise, as the President may direct.”
In pursuance of said article George H. Ambrose, L. F. Groves, and A. O. Gibbs were in 1854 appointed commissioners to estimate the amount of property of the whites destroyed by said Indians “during the late war” between said tribe and the United States, therein referred to.”
The commissioners found that the war commenced August 3, 1853, and ended September 10, 1853. They acted upon seventy-three claims, and made awards in the aggregate amounting to 143,140.
*178 Aside from tbe treaty tbe claimant bas no right to demand compensation from any source. Tbe depredations were tbe ravages of war, wherein tbe loss must be borne by the persons upon whom they happened to fall.
Tbe Indians, however, by levy of their conquerors or other stress of necessity, did allow to be retained out of money due them for lands sold tbe sum of $15,000 “to pay for property of tbe whites destroyed by them during tbe late war,” and for this amount Congress made an appropriation by tbe Act of July 31, 1854, chapter 167 (10 Stat. L., 325). This was insufficient to pay in full all tbe awards made by tbe commissioners. Tbe Interior Department did tbe only thing that could be done: divided tbe amount pro rata among tbe several awards, and held tbe share of each person to be called for by him.
Herein lie all tbe legal rights of tbe claimant. Tbe amount set aside for him was $1,451.99, which be bas already received. He can recover nothing more, and bis petition must be dismissed.